ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| IMC Construction Group | ) | ASBCA No. 62422 |
| | ) | |
| Under Contract No. W91278-16-D-0037 | ) | |

APPEARANCE FOR THE APPELLANT:          Thomas J. Tollefsen, Esq.
                                        Tritt and Associates
                                        Jacksonville, Florida

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                        Engineer Chief Trial Attorney
                                        David C. Brasfield, Jr., Esq.
                                        Kathleen P. Miller, Esq.
                                        Engineer Trial Attorneys
                                        U.S. Army Engineer District, Mobile

OPINION BY ADMINISTRATIVE JUDGE MCLISH ON RESPONDENT'S
MOTION FOR RECONSIDERATION

The government moves for reconsideration of the Board's March 29, 2023 decision (Decision) granting the appeal of IMC Construction Group. Inc. (IMC). *IMC Constr. Grp*. ASBCA No. 62422, 23-1 BCA ¶ 38,321. The motion is denied in part and granted in part.

A party moving for reconsideration "must demonstrate a compelling reason for the Board to modify its decision . . . . [In doing so] we look to whether there is newly discovered evidence or whether there were mistakes in the decision's findings of fact, or errors of law." *Golden Build Co.*, ASBCA No. 62294, 20-1 BCA ¶ 37,742 at 183,161 (quoting *Bruce E. Zoeller*, ASBCA No. 56578, 14-1 BCA ¶ 35,803 at 175,103). "A motion for reconsideration does not provide the moving party the opportunity to reargue its position or to advance arguments that properly should have been presented in an earlier proceeding." *Philips Lighting N. Am. Corp.*, ASBCA No. 61769, 21-1 BCA ¶ 37,821 at 183,647; s*ee Potomac Elec. Corp.*, ASBCA No. 61371, 20-1 BCA ¶37,663 at 182,862 ("A motion for reconsideration is not intended to present a post-decision bolstering of contentions which we have already rejected.").

## I.      Government-Directed Subcontracting

The government first argues that the statement in the Decision that "it is unusual for the government to direct the use of a particular subcontractor" (*IMC,* 23-1 BCA ¶ 38,321 at 186,092) is a finding of fact that lacks support in the record.  To the contrary, the statement is an observation made in the context of performing contract interpretation, a question of law, which requires us to give the contract "that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (quoting *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed.Cir.1999)).

A reasonably intelligent person acquainted with government contracting understands that typically prime contractors are permitted to select their own subcontractors (often subject to government approval), and that it is the exception rather than the rule when the government dictates the use of a particular subcontractor.  This is supported by the FAR, which requires the inclusion in many contracts (including this one) of a clause requiring the contractor to "select subcontractors (including suppliers) on a competitive basis to the maximum practical extent consistent with the objectives and requirements of the contract."  FAR 52.244-5, COMPETITION IN SUBCONTRACTING (DEC 1996); (R4, tab 4 at 28).

In any event, the government makes no serious effort to demonstrate that our observation is inaccurate.  The government offers the statement of a contracting officer that USACE Mobile District routinely directs the use of a specific service provider "when that is the only entity authorized to provide the service on that particular military base" (gov't mot. at 5, ex. 1 (Dec. of K. Rodgers) ¶ 6).  It offers no evidence, however, that such circumstances are the norm rather than the exception.

Finally, our interpretation of the task order in this case was not dependent on our observation about government-directed subcontracting.  For the additional reasons stated in the Decision, including the task order's explicit prohibition against any entity other than the government's provider performing any of the DDC installation work, our interpretation would be the same without that observation.

Accordingly, there is no basis for reconsideration of the Decision on this ground.

## II.     IMC's Self-Performance

The government next argues that the Decision incorrectly stated that IMC's proposal indicated it would self-perform all of the work. *IMC,* 23-1 BCA ¶ 38,321 at 186,089, 186,092.  The government is correct that we overlooked that IMC's statement that it intended to perform 100% of the work was in the context of a formula that excluded subcontracted mechanical, engineering and plumbing work (R4, tab G-8).  This oversight, however, does not change the outcome of the decision.  Our primary holding, that the unambiguous contract language did not require IMC to provide the DDC system, did not rely on the extent of IMC's self-performance.  *IMC,* 23-1 BCA ¶ 38,321 at 186,091-92.

The Decision refers to IMC's self-performance only in connection with the first alternative holding, where we found that, even if the contract was ambiguous, the extrinsic evidence does not support the government's interpretation.  *IMC,* 23-1 BCA ¶ 38,321 at 186,092-93.  Eliminating IMC's self-performance from the body of extrinsic evidence of the parties' intent does not change that holding.  The remaining evidence does not support the government's theory that IMC understood it would need to subcontract with the government's service provider but nonetheless chose to submit a proposal without taking any steps to ascertain who that service provider was or what it would charge for the work.[1]

At most, eliminating IMC's self-performance from the equation results in a situation where the extrinsic evidence does not resolve the (hypothetical) ambiguity in the contract language, in which case the outcome would be the same under our second alternative holding, which is that the contract must be construed against the government under the doctrine of *contra proferentum.*  *IMC,* 23-1 BCA ¶ 38,321 at 186,093-94.

The motion to reconsider on this ground is granted to the extent of our clarification above and otherwise denied.

---

[1] The Decision also relied on the absence of any evidence that the government interpreted the contract as requiring IMC to provide the DDC system at the time the contract was made.  *IMC,* 23-1 BCA ¶ 38,321 at 186,093.  The government belatedly attempts to fill this gap with a declaration attached to its motion for reconsideration (gov't mot. at ex. 1 (Dec. of K. Rodgers) ¶ 5).  A motion for reconsideration is not a proper vehicle to introduce evidence that could have been timely presented. *David Boland, Inc.,* ASBCA Nos. 63007, 63008, 23-1 BCA ¶ 38,331 at 186,138.  Because this evidence could have been presented during the Rule 11 process, it is untimely and not a basis for reconsideration of our decision.

### III.  IMC's Budget for Controls-Related Work

The government next takes issue with another aspect of our alternative holding addressing the extrinsic evidence of the parties' intent.  The government challenges the Decision's statement that the fact that IMC budgeted only $43,000 for work related to the controls, when providing the controls cost $283,000, "tends to support the conclusion that IMC was expecting only to coordinate with the government's DDC system provider, not provide the system itself."  *IMC,* 23-1 BCA ¶ 38,321 at 186,093.  The government is simply rearguing the position it took during the Rule 11 briefing and that we already rejected.  It is therefore not the proper subject of a motion for reconsideration.  *Philips Lighting N. Am. Corp*., ASBCA No. 61769, 21-1 BCA ¶ 37,821 at 183,647.

### IV.  IMC's Post-Award Inquiry to the Government's Provider

Next, the government argues that the Decision contradicted itself when it noted that IMC did not ask for the name of the government's provider or seek a proposal from that provider.  *IMC,* 23-1 BCA ¶ 38,321 at 186,092.  This is incorrect.  The government points to our findings of fact 15 and 16 that IMC eventually did ask for the provider's name and sought a proposal from it.  *Id.* at 186,089.  These inquiries, however, came *after* the contract had been awarded.  *Id.*  We found that the fact that these crucial steps were not taken *before* IMC submitted its proposal is consistent with IMC not understanding at the time of contract award that it would be required to subcontract with the government's provider.  *Id.* at 186,092.  We found this understanding reasonable in light of the government drafters' utter failure to convey an intent that the contractor subcontract with the government's service provider.  *Id.* at 186,093-94.  The government's arguments regarding IMC's post-award communications with its provider were previously considered and rejected and are not an appropriate basis for reconsideration.

### V.  Decision on Quantum

Finally, the government argues that we should not have decided the quantum of money which IMC may recover, but rather should have restricted our ruling to the issue of entitlement.  The government correctly points out that a Board Order dated June 25, 2020, indicated that the Board intended to decide entitlement only.  IMC argues that the government waived this argument because IMC set forth its quantum case in its Rule 11 brief and the government's response was that IMC was not entitled to that relief, not that quantum was beyond the scope of what the Board was to decide.  Nonetheless, under the circumstances we conclude that government should be permitted an opportunity to contest IMC's quantum case.

4

CONCLUSION

For the reasons set forth above, the motion for reconsideration is denied in part and granted in part. The portion of the March 29, 2023 decision that awarded IMC $326,865 is rescinded. The Board remands the matter to the parties to determine quantum.

Dated: July 6, 2023

THOMAS P. MCLISH
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62422, Appeal of IMC Construction Group, rendered in conformance with the Board's Charter.

Dated: July 7, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

5